Filed 6/26/13  P. v. James CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D062386 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCN302219) |
| LEVI JAMES, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Richard E. Mills, Judge.  Affirmed in part and reversed in part.

Jared G. Coleman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Lilia E. Garcia and Peter Quon, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Levi James of robbery (Pen. Code,[1] § 211); assault with a deadly weapon (§ 245, subd. (a)); burglary (§ 459); and misdemeanor petty theft (§ 484). The jury also found true an allegation that James used a deadly weapon in the commission of the robbery and assault with a deadly weapon (§§ 12022, subd. (b)(1); 1192.7, subd. (c)(23)). The trial court found true a prison prior (§ 667.5, subd. (b)) and a serious/violent felony prior conviction (strike prior) (§ 667, subds. (b)-(i)).

At the sentencing hearing the trial court struck the prior convictions and sentenced James to a determinate term of four years eight months in prison.

During trial, one of the police officers involved testified that when he arrived at the crime scene someone described James as a parolee-at-large. James appeals contending the trial court erred in failing, sua sponte, to grant a mistrial and that the court's instructions to the jury did not cure the prejudice caused by the officer's volunteered statement. James also contends the conviction for petty theft must be reversed.

The respondent correctly concedes the petty theft conviction must be reversed because it is a lesser included offense of the robbery in this case. We agree and will reverse that conviction. Otherwise we will affirm the judgment.

Before we proceed with this opinion we must observe the record in this case is difficult. Defense counsel raised the issue of mistrial, but did not want to request it. Counsel wanted the court to grant a mistrial on its own motion so that double jeopardy would bar retrial. For its part, the court repeatedly lamented the perceived grievous

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

nature of the error and would have granted a mistrial if the defense had requested it. The court declined to dismiss the case or to grant a mistrial on its own motion. The court did extensively instruct the jury about its duty to disregard the officer's comment.

The defense did not bring a motion for new trial and the court declined to dismiss any of the counts. The court did, however, continue to lament the officer's error, and concluded, with nothing on the record to substantiate its comments, that the prosecutor "grossly" violated her duty to instruct her witnesses; and then used the perceived prejudice to justify striking the prior convictions and imposing a middle term. Making the record even more curious, the court declined to strike the allegation of personal use of a deadly weapon and imposed a consecutive eight-month sentence for the burglary count.

After careful review of this colorful record, we conclude the erroneous comment was brief, unsolicited and never repeated. The court's prompt and thorough instruction to the jury cured any prejudice under the circumstances of this case. We do not find anything in the record to demonstrate misconduct by the prosecution. Indeed the record is devoid of explanation of why the officer volunteered his comment.

STATEMENT OF FACTS

James does not challenge the sufficiency of the evidence to establish his guilt of the charged offenses. The actual facts of those offenses are not very significant in the analysis of the legal issues in this case. Accordingly, we will adopt the brief summary of the facts as set forth in the respondent's brief.

About 9:30 p.m., on February 12, 2012, Micah Clothier was working as a nonuniformed asset protection agent in a drug store on South Coast Highway in

3

Oceanside, California, when appellant entered the store with another man. Clothier watched as appellant walked around the store for about a minute and then walked to the liquor section of the store.

While standing in an aisle next to the liquor section and looking at a ceiling mounted mirror over the liquor section and a television monitor displaying the liquor section, Clothier saw appellant remove a sensor cap from a bottle of Jack Daniel's liquor worth $40.00, and put the bottle down his pants leg. Clothier decided to stop appellant in the store rather than to allow appellant to leave the store with the liquor.

As appellant walked down an aisle towards Clothier, Clothier identified himself to appellant as the store's agent, and demanded appellant hand Clothier the liquor. Appellant responded, "I don't give a fuck who you are," continued to walk at Clothier, and caused Clothier to move to the side. Appellant pushed past Clothier and bumped Clothier's shoulder with his own shoulder. When Clothier stepped back into appellant's path, appellant responded by rushing at Clothier, with both hands extended and arms bent at the elbow, and he grabbed Clothier's throat with an open hand. Clothier grabbed appellant's neck to protect himself, and the two men began grappling with each other.

After Clothier managed to place appellant into a headlock, Clothier felt a hard, blunt object twice hit the back of his head. Clothier's head began to hurt. No one was behind Clothier. Clothier saw that appellant was holding the liquor bottle by the neck. Another worker in the store also saw appellant holding a bottle as appellant was struggling with Clothier.

4

After Clothier yelled for help, store employees and a bystander rushed to Clothier's assistance and helped put appellant on the ground. The bottle broke on the ground. As appellant struggled to get free, he grabbed Clothier's crotch. Clothier responded by punching him a couple of times. Police arrived soon thereafter and arrested appellant.

Clothier suffered a lump and a laceration to the back of his head and an injury to the bridge of his nose.

Appellant had no cash, wallet, or method of payment with him at the time he was arrested.

Appellant did not testify.

## DISCUSSION

James contends the trial court abused its discretion in declining to declare a mistrial, sua sponte, after a police officer volunteered during his testimony that James was "a parolee-at-large." As we will explain, the trial court was well within its discretion to decline to declare a mistrial on its own motion and the remedy of extensive corrective jury instructions eliminated any possible prejudice.

### A. Background

Prior to the commencement of trial, the court granted a defense motion to exclude evidence that James was on parole at the time of the current offense. The court directed the prosecution to instruct its witnesses to refrain from mentioning such parole status.

5

During the testimony of Oceanside Police Officer Nickolas Nunez, the officer was asked about his actions when he arrived at the store where James had been detained. The relevant questions and answers were:

> "Q. [Prosecutor]: So when you arrived, what did you do? What was your role?
>
> "A. [Officer Nunez]: I took over the investigation.
>
> "Q. [Prosecutor]: And what did your investigation entail?
>
> "A. [Officer Nunez]: When I arrived on scene, they had a subject, who was later identified as Levi James, detained out in front of the store. Officer Simms had advised me that Mr. James was a parolee-at-large."

At that point the trial court interrupted Officer Nunez and had the jurors leave the room.

The court met with counsel outside the presence of the jury. Defense counsel requested time to confer with his client to see if there would be a request for a mistrial. After counsel and client had conferred, the court resumed:

> "The Court: Out of the presence of the jury with counsel and defendant present. [¶] There has been some discussion about a variety of things without the jury present. It was off the record. [¶] At this point, Mr. Stone, having conferred with your client, Mr. James, do you want to make a motion for mistrial, which I would grant, or do you not want to make that motion?
>
> "Mr. Stone [defense counsel]: I am not going to make that motion given the fact that it would give the chance for the prosecutor to try it again. [¶] We are -- I have discussed it with my client. We are not going to make that motion.
>
> "The Court: All right. Ms. Conway, you want to proceed?"

6

When the jury returned, the court instructed them as follows:

"The Court: We are back in session. All jurors are present. [¶] I just remind you again: Disregard the last statement in answer the [sic] question by Officer Nunez. [¶] The issue raised by his statement is not going to be litigated in this trial. [¶] And it's not, at this point in the trial, it's not relevant. [¶] This is really your job. I may have more instructions on this later for you. [¶] But you have heard this trial. You have been here for a couple days now, day-and-a-half. By the time you finish with the case, you will have at least invested two days with us. [¶] You have done a real good job being jurors. [¶] So I am going to ask something of you which I really want you to do: That is, I want you to do what I said, which is disregard that last statement. [¶] And we are going to proceed with the trial."

After the conclusion of the evidence the court instructed the jury on the law.

During those instructions the court made the following additional comments:

"The Court: So let me digress just a second. There was something that came up that I told you to disregard. I made a point of it as much as I can, as much as I could. [¶] But I want to emphasize it again. I will be real disappointed if you don't completely disregard it. You should not discuss it in the jury room. [¶] Again, I would be disappointed if I ever heard you were talking about it in the jury room because that evidence was stricken. It's not evidence. [¶] You must disregard anything you saw or heard when the court was not in session, even if it was done or said by one of the parties or the witnesses."

## B. Legal Principles

A trial court should only declare a mistrial when the opportunity for a fair trial has been irreparably lost and cannot be cured by admonition or instruction. (*People v. Avila* (2006) 38 Cal.4th 491, 573.) Determining whether to grant a mistrial or to utilize other remedies is within the sound discretion of the trial court. (*People v. Jenkins* (2000) 22 Cal.4th 900, 986.) Such exercise of discretion will not be overturned on appeal unless the record demonstrates a clear abuse of that discretion. In this context we look particularly

7

at the error leading to possible mistrial and whether the remedy selected by the court was sufficient to dispel any prejudice arising from that error.

The opinion in *People v. Avila*, *supra*, 38 Cal.4th 491 is instructive.  In that case a prosecution witness commented on the fact that Avila had just been released from prison. There the trial court struck the statement and carefully instructed the jury to disregard it. On that record the Supreme Court found no abuse of discretion.  (*Id*. at pp. 571-574; see also *People v. Haskett* (1982) 30 Cal.3d 841, 854; *People v. Valdez* (2004) 32 Cal.4th 73, 128.)

## C.  Analysis

Undoubtedly the police officer's volunteered statement about parole status was improper.  As we have noted, however, the trial court immediately interrupted the officer and took aggressive action to sort out the proper remedy.  The court stated it would grant a mistrial if requested.  Significantly here, the defense refused to ask for a mistrial.  After conferring with James, defense counsel was satisfied with its case so far and did not want a mistrial where the prosecution might be able to retry the case.  The defense wanted a dismissal of the case or at least dismissal of the robbery count.  Failing that outcome, defense counsel wanted the court to declare a mistrial on its own motion in the hope that principles of double jeopardy would bar retrial.  In other words, absent a dismissal or a mistrial that would have the same result, the defense was satisfied with the state of the evidence at that time and refused to request a mistrial.

James does not challenge the trial court's decision not to dismiss any counts, which is understandable since the single, unrepeated comment could not justify a dismissal of

8

charges. Nor is there evidence of some prosecutorial misconduct designed to prejudice James or to goad him into a mistrial. There was no inquiry as to why the officer volunteered his comment. There was nothing in the question asked which would have called for the response. Nor did the court conduct any inquiry as to whether the prosecutor had counseled her witnesses as earlier ordered.

What this case boils down to is one gratuitous, albeit improper, remark about which the jury was promptly and thoroughly admonished. The defense sought termination of the prosecution as the remedy, and absent such termination specifically declined a mistrial which could permit retrial. While there is no harm in the defense seeking an extreme and unwarranted remedy, the course chosen by the court here to carefully instruct the jury was not an abuse of discretion.

## DISPOSITION

The conviction for petty theft as alleged in count 4 is reversed as it is a lesser included offense of robbery in this case. In all other respects, the judgment is affirmed.


HUFFMAN, Acting P. J.

WE CONCUR:


McINTYRE, J.


AARON, J.

9